Bruce F. P. WILLIAMS and Kathleen G. Williams, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 4–67 Civ. 331.

United States District Court
D. Minnesota,
Fourth Division.

July 1, 1969.

Fredrikson, Byron & Colborn, H. M. Fredrikson, Jerome B. Pederson, Lawrence Perlman, Minneapolis, Minn., for plaintiffs.

Patrick J. Foley, U. S. Atty., Minneapolis, Minn., Donald Anderson, Dept. of Justice, Washington, D.C., for defendant.

FINDINGS OF FACT
CONCLUSIONS OF LAW, AND
ORDER FOR JUDGMENT

NORDBYE, District Judge.

FINDINGS OF FACT

1. This is an action for the recovery of federal income taxes collected from the plaintiffs and jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(a) (1).

2. The plaintiffs are suing to recover a refund of a portion of the federal income taxes they paid for the calendar year ending December 31, 1966, pursuant to a joint return. The plaintiff, Bruce F. P. Williams, M.D., is a director, officer, and employee of The Duluth Clinic, Ltd. and the suit for refund is based exclusively on income attributable to him by reason of such employment. Dr. Williams (hereinafter referred to as the taxpayer) included in his taxable income for the year 1966 an amount as income from The Duluth Clinic, Ltd. in excess of the salary he received as an employee of The Duluth Clinic, Ltd. The additional 1966 income arose from computing the taxpayer's income from the Clinic as if the Clinic was taxable as a partnership and he was a partner. This suit was then commenced for the primary purpose of determining whether The Duluth Clinic, Ltd. is taxable as a corporation or a partnership under the 1954 Internal Revenue Code. The parties have stipulated that the central and controlling issue to be adjudicated in this action is whether The Duluth Clinic, Ltd., a professional corporation under the laws of Minnesota, is entitled to be

taxed as a corporation under the 1954 Internal Revenue Code. The parties have also stipulated, only for the purpose of this action, that if The Duluth Clinic, Ltd. is taxable as a corporation, the profit sharing plan adopted by it qualifies under Section 401 of the 1954 Internal Revenue Code. The plaintiffs are entitled to a refund in the principal amount of $4,695.00 with interest thereon according to law if The Duluth Clinic, Ltd. is taxable as a corporation under the 1954 Internal Revenue Code.

3. The Duluth Clinic, Ltd. was organized as a professional corporation under the Minnesota Business Corporation Act (Minnesota Statutes, Chapter 301) pursuant to the provisions of Minn.Stat. §§ 319.01–319.23 (1965) (Minnesota Professional Corporation Act). Its Articles of Incorporation were filed with the Secretary of State of Minnesota on December 11, 1964, and proof of notice of incorporation was also duly filed on January 6, 1965. The Secretary of State issued the certificate of incorporation on December 11, 1964.

4. Pursuant to the provisions of Minnesota Statutes § 319.07 (1965), the corporation received its certificate of registration from the Minnesota State Board of Medical Examiners and thereafter on January 1, 1965, commenced the business of rendering medical services and offering medical facilities for a profit. As required by statute, the corporation has renewed its certificate of registration annually pursuant to the provisions of Minn.Stat. § 319.08 (1965). Just prior to trial, on November 26, 1968, the Secretary of State of Minnesota certified that The Duluth Clinic, Ltd. (hereinafter sometimes referred to as the corporation) is a corporation of the State of Minnesota, created, organized and existing under and by virtue of and in full and complete compliance with the laws of Minnesota.

5. Prior to the aforesaid incorporation the business of rendering medical services and offering medical facilities was conducted by The Duluth Clinic, a partnership.

6. The corporation was formed for the purpose of operating a medical clinic and the services ancillary thereto.

7. On December 11, 1964, the first Board of Directors of the corporation met and duly adopted bylaws, elected officers, issued stock, adopted a banking resolution, and took all other actions normally taken by a Board of Directors at a first meeting.

8. From the outset the affairs of the corporation have been run by its Board of Directors which has met periodically and minutes of its meetings have been regularly kept and maintained in corporate minute books.

9. Shares of capital stock in the corporation were issued on January 1, 1965 (including the share purchased by the taxpayer) and additional shares have been purchased and issued from time to time subsequent thereto. The corporation keeps and maintains a stock transfer record reflecting the shares of stock issued, the shares of stock cancelled, and the revenue stamps in connection with such transfers.

10. The Articles of Incorporation provide that the duration of the corporation shall be perpetual.

11. The Articles of Incorporation provide, among other things, that the management of the corporation shall be vested in the Board of Directors, that the number of directors shall be fixed by the bylaws, that the directors shall be elected at the annual meeting of the shareholders, that regular and special meetings of the shareholders and directors shall be held at such time and at such places as may be designated in the bylaws, that the annual meeting of the Board of Directors shall be held as soon as practical following the annual meeting of the shareholders, that the executive officers of the corporation shall be a president, vice president, secretary and treasurer. From the outset the management of the corporation has been conducted in accordance with such provisions of the articles, meetings have been held in accordance therewith, and execu-

tive officers of the corporation have been elected by the Board of Directors in accordance therewith.

12. Article 3 of the bylaws provides, among other things, that the property, affairs, and business of the corporation shall be managed by the Board of Directors and that the Board of Directors shall fix the compensation of all officers, agents, and employees. The Board of Directors is expressly authorized and empowered by the provisions of Article 7 of the Bylaws to do the following:

a) Issue shares of capital stock of the corporation.

b) Make and amend the bylaws of the corporation subject to the power of the shareholders to enact, change or repeal such bylaws and subject to the requirement that a vote of at least 85% of the voting power of all shares entitled to vote is necessary to ratify any decision of the Board altering any bylaws fixing the number, qualifications or terms of office of members of the Board or making any changes in Section 5.4 of Article 5 of the bylaws.

c) Fix the amount to be reserved as working capital over and above its capital stock paid in; to authorize and cause to be executed mortgages and liens upon the real and personal property of the corporation.

d) Authorize the corporation to enter into agreements with any shareholder regarding disposition of his shares of stock in the case of his death, termination of employment, disability or retirement from medical practice or in any other contingency.

e) Retain professional and other assistance in the operation of the corporation including a director's own services as a professional employee and the professional services of any other shareholder or shareholders of the corporation.

f) Authorize the corporation to enter into agreements with the employees regarding the terms of their employment, including matters such as compensation, salary continuation in the event of termination or disability, disability benefits, vacation pay, sick leave and other matters involved in the employment relationship.

g) Devise from time to time and to authorize the medical staff department heads to administer and enforce work rules and policies relating to matters such as work assignments and schedules, including night and holiday work, vacation schedules, automobiles and entertainment expenses, attendance at conventions and educational sessions or seminars, handling of professional membership and dues, and such other matters as the Board may deem necessary or appropriate.

h) When as authorized by the affirmative assent of eighty-five percent (85%) of the voting power to sell, exchange or otherwise dispose of all or substantially all of the corporation's property and assets upon such terms and conditions and for such considerations as the Board of Directors deems advisable.

13. The corporation's affairs from the outset have been managed in accordance with its articles and bylaws. The articles and bylaws vest in the Board of Directors the sole and continuing exclusive authority to make management decisions on behalf of the corporation and the Board of Directors has in fact exercised its sole and continuing exclusive authority in making decisions relative to the management of the affairs of the corporation. The Board of Directors has exercised its sole discretion and authority in hiring doctor-employees. The Board has delegated the hiring and termination of non-doctor employees and lay employees to the business administrator subject to certain policy guidelines and rules established by it. The Board has exercised its sole discretion in determining the compensation to be paid to the corporation's doctor-employees and has also determined the salary schedules for non-doctor employees and lay employees of the corporation. The Board has established the usual and customary fee for medical services includ-

ing a policy of courtesy discounts to be followed by all doctor-employees and no doctor-employee can vary from the same unless express permission is granted by the Board of Directors. The Board has adopted and approved a system of collection on past due accounts delegating the implementation of such system to the business administrator hired by the Board. The Board has adopted or approved the various records, forms, and documents to be maintained and kept by the corporation and to be used by the various employees of the corporation and has adopted policies concerning the use and disposition of such forms, documents and records. The Board exercises sole authority concerning purchases of equipment or the rental of equipment. The Board has determined conditions of employment for all employees of the corporation including working hours, vacation periods, sick leave policies, and other matters involved in the employment relationship. On occasion the Board has exercised its sole authority and discretion concerning the acceptance of patients or particular classes of patients for care and treatment by the corporation. The Board has reserved sole discretion to terminate a doctor-employee if in its determination a particular doctor-employee has not practiced medicine according to acceptable standards or has violated any of the terms or conditions of his employment agreement. The Board has hired a business manager whose function is to supervise and conduct the day to day business operations of the corporation. The administrator reports directly to the Board of Directors and the officers of the corporation only and derives all authority from the Board in the conduct and performance of his duties. Corporation was operated and the physicians employed by it practiced their profession in conformity with the canons of the American Medical Association as set forth in Government Exhibit A.

14. A shareholder during his lifetime has the unrestricted right sixty (60) days after giving notice to the corporation, to transfer his shares to any other shareholder or shareholders of the corporation. A shareholder during his lifetime also has the right to sell and transfer his shares to any other physician or surgeon subject to the corporation's right of first option to purchase such shares. However, restrictions on the transfer of shares to any persons other than shareholders are comparable to those which normally would be imposed on the transfer of stock in any closely held corporation.

15. Each doctor-employee of the corporation, including employees who are also shareholders, has an employment agreement with the corporation, which agreements have the common provision that he will accept and carry out to the best of his ability all instructions and directions that may be given him by the Board of Directors.

16. During the tax year in question, there were 32 shareholders in the corporation, 48 doctor-employees (including shareholders) and approximately 169 professional and lay employees not including doctors.

17. The corporation has filed corporate tax returns for each year of its existence and has paid taxes as a corporation for such years. Since the date of incorporation the corporation has withheld from the compensation of all employees, including doctors, federal and state withholding taxes and social security taxes. Since the date of incorporation all employees, including doctors, have been covered for purposes of workmen's compensation and have been included for purposes of computing and filing unemployment compensation returns.

18. Limited liability is provided for by Minn. Stat. §§ 319.16 and 319.19 (1965) and is insured by the provisions of Article 13 of the bylaws. Article 13, which is entitled "Relationship and Liability to Patients", provides as follows:

"13.1) Specifically, it is not intended hereby to change or alter the relationship existing between a physician

and his patient and no director or shareholder shall have any right whatsoever to interfere with the treatment given by a physician or surgeon in the employ of the corporation to a patient under his care. A physician or surgeon in the employ of the corporation, whether or not he may also be a director or shareholder, shall have and be subject to all the duties, responsibilities and liabilities toward patients to whom he administers as may customarily obtain between physician and patient."

19. In 1965 the so-called Kintner Regulations promulgated by the Treasury in 1960 under § 7701 of the 1954 Internal Revenue Code were amended by the addition of language to paragraph (c) of Treas.Reg. § 301.7701–1, the addition of the words "including organizations labeled 'corporations'" to the heading of § 301.7701–2 which previously read "associations", the addition of a new paragraph 5 to § 301.7701–2(a), the deletion of example (1) under paragraph (g) of § 301.7701–2, and the addition of subparagraph (h) to § 301.7701–2. The foregoing 1965 amendments are inconsistent with the explicit language of § 7701(a) (2) and (3) of the 1954 Internal Revenue Code, are inconsistent with all relevant judicial decisions rendered prior to their promulgation, are in conflict with the Treasury's prior regulations thereunder, and deliberately discriminate against professional corporations or associations formed by doctors or lawyers in the application of the provisions of the Internal Revenue Code.

## CONCLUSIONS OF LAW

■ 1. The Duluth Clinic, Ltd. should be classified and taxed as a corporation for federal income tax purposes because as a corporation under the laws of the State of Minnesota it is a corporation as defined in § 7701(a) (3) of the 1954 Internal Revenue Code.

■ 2. Treasury Regulations § 301.–7701–1 and 301.7701–2 as amended in 1965, are invalid on the grounds that such regulations are inconsistent with

the explicit language of § 7701(a) (2) and (3) of the 1954 Internal Revenue Code, are inconsistent with all relevant judicial decisions rendered prior to their promulgation, are in conflict with the Treasury's prior regulations thereunder, and deliberately discriminate against professional corporations or associations formed by doctors or lawyers in the application of the provisions of the Internal Revenue Code.

3. The plaintiffs are entitled to a judgment against the defendant for the principal amount of $4,695.00 with interest at six percent (6%) thereon from August 15, 1967 according to law.

### ORDER FOR JUDGMENT

Let judgment be entered for plaintiffs accordingly.